UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of BILLD EXCHANGE, LLC, a Delaware limited liability company,<br><br>                  Plaintiff,<br><br>vs.<br><br>BEST CHOICE CONSTRUCTION, LLC, a North Dakota limited liability company, and UNITED STATES FIRE INSURANCE COMPANY, a Delaware corporation,<br><br>                  Defendants. | 5:21-CV-05042-KES<br><br><br>ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT |

Defendant United States Fire Insurance Company (USF) moves for summary judgment on count 4 – Miller Act Payment Bond – and count 5 – declaratory judgment. Docket 51. Plaintiff, Billd Exchange, LLC, moves for summary judgment in its own favor on the same claims. Docket 55.

## BACKGROUND

### I. Factual Background

The court summarizes the relative facts below. A more complete summary of the factual background in this matter is available at Docket 77.

On or about January 2, 2020, The Bureau of Indian Affairs (BIA) solicited bids for a roof replacement project at the Adult Offender Facility in Pine Ridge, SD. Docket 61 ¶ 1. Best Choice Construction, LLC (Best Choice) was selected

as the principal contractor on the project. *Id.* ¶ 2. As required by the Miller Act, Best Choice obtained a payment bond from USF in the amount of $1,324,627.20. Docket 58-2 at 2; *see* 40 U.S.C. § 3131(b). Best Choice then entered into a subcontract with Vertex Roofing, LLC (Vertex) on or about April 10, 2020 for Vertex to remove and replace the roof at the Adult Offender Facility. Docket 58-1 at 3; Docket 61 ¶ 4.

To complete work on the subcontract, Vertex was required to provide certain materials and labor. Docket 61 ¶ 6. At least some of those materials were sourced from Duro-Last. *Id.* ¶ 7 (disputing who sourced materials, but not the origin of materials). On or about February 17, 2020, Vertex entered into an agreement with Billd for Billd to facilitate acquisition of the project materials. *Id.* ¶ 8. In May 2020, Vertex and Billd entered a purchase statement pursuant to the previous agreement between the parties to purchase certain roofing materials, membrane and adhesive, acrylic domes, fall protection screens, and related materials and supplies for use on the project. Docket 57 ¶ 10; Docket 64 ¶ 4. In this purchase statement, Vertex agreed to pay $353,902.57. Docket 57 ¶ 11; Docket 64. Billd never received full payment from Vertex. Docket 58 ¶ 16.

On October 15, 2020, Billd supplied Best Choice and USF with notice under the Miller Act that it remained unpaid in full. Docket 58-8 at 1-2. Billd has not to date received any payment from USF. Docket 58 ¶ 21-22.

## II.   Procedural History

Billd filed a complaint with this court on July 20, 2021 alleging, among other claims, that it was entitled to payment by USF under the payment bond secured by Best Choice under the Miller Act. Docket 1 ¶¶ 40-43. On August 16, 2022, the court granted Billd's motion to consolidate cases, and the related case, originally docketed at 22-cv-5001, was consolidated with this action. Docket 36.

On November 4, 2022, USF moved for summary judgment on Billd's Miller Act claim. Docket 51. That same day, Billd moved for summary judgment in its own favor on the same claim. Docket 55.

## DISCUSSION

## I.   Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). In response, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *RSA 1 Ltd. P'ship v. Paramount Software Ass'n., Inc.*, 793 F.3d 903, 906 (8th Cir. 2015) (internal quotations omitted) (citing *Torgerson v. City of Rochester*, 643

F.3d 1031, 1042 (8th Cir. 2011) (en banc)). The court views the facts in the light most favorable to the nonmoving part, but only "if there is a genuine dispute as to those facts." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the [factfinder] could reasonably find for the [party]." *Turner v. XTO Energy, Inc.*, 989 F.3d 625, 627 (8th Cir. 2021) (second alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp*, 477 U.S. at 327 (1986) (quoting Fed. R. Civ. P. 1).

## II.    Who Can Recover under the Miller Act?

Under the Miller Act, "[b]efore any contract of more than $100,00 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government" certain bonds. 40 U.S.C. § 3131(b). Though "[o]rdinarily, a supplier of labor or materials on a private construction project can secure a mechanic's lien against the improved property under state law[,]" "a lien cannot attach to Government property," thus depriving subcontractors of their usual security interest. *F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 122 (1974). Congress enacted the Miller Act to remedy this

4

insecurity and to protect the interests of subcontractors on government projects. *Id.* In relevant part, the Miller Act provides that:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought . . .

40 U.S.C. § 3133(b)(1). "The Act is to be construed broadly because of its remedial nature." *Consol. Elec. & Mechs., Inc. v. Biggs Gen. Contracting, Inc.*, 167 F.3d 432, 434 (8th Cir. 1999).

But the broad nature of the Act is not without limit. In construing Section 2(a), the Supreme Court held that:

> [T]he right to bring suit on a payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and sub-contractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor.

*Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107-08 (1944). As the Eighth Circuit further explained, "[i]t is the generally accepted view that one who loans or advances money to another for the purpose of meeting payroll and paying for supplies cannot sue a surety who has guaranteed payment to those furnishing labor and materials." *United States ex rel. First Cont'l Nat'l Bank & Tr. Co. v. W. Contracting Corp.*, 341 F.2d 383, 387 (8th Cir. 1965). "The supplying of money is not equivalent to or

5

synonymous with the furnishing of labor and materials even if the money supplied is used in payments for such labor and materials." *Id.* Thus, first-tier subcontractors and the subcontractors and materialmen in privity with them may recover on a Miller Act bond, but financiers may not.

The primary contractor in this matter was Best Choice, with Vertex serving as a first-tier subcontractor. *See* Docket 58-1; Docket 61 ¶ 1-2, 4. The parties agree that Billd is not a subcontractor but disagree over whether Billd is a second-tier materialman who can recover on the bond or a financier whose recovery is prohibited. *See* Docket 54 at 4; Docket 56 at 5-6. USF argues that Billd is a financier because it only provided the funds for Vertex to acquire materials, and never dealt in the materials themselves. Docket 54 at 4-8. Billd argues that it is a materialman because it bought materials for the project and then resold them to Vertex. Docket 56 at 8-9.

As an initial matter, the court considers the definition of the term materialman. As the parties highlight, neither the term materialman nor financier is defined by the Miller Act. Nor have subsequent courts provided a coherent definition of the terms.

**III.    Is Billd a materialman or a financier?**

    **A. Ordinary or natural meaning**

"[W]hen a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Iverson v. United States*, 973 F.3d 843, 847 (8th Cir. 2020) (quoting *United States v. Jungers*, 702 F.3d 1066, 1071 (8th Cir. 2013)). A word's ordinary or natural meaning typically "accords

6

with its dictionary definition." *Id.* (quoting *Thompson Truck & Trailer, Inc. v. United States*, 901 F.3d 951, 953 (8th Cir. 2019)). When looking at the dictionary definition, the court should consider the ordinary definition "at the time Congress enacted the statute." *Wisconsin Cent. Ltd. v. United States*, 138 S.Ct. 2067, 2070 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)); *see also* The Miller Act, Pub. L. No. 321, 49 Stat. 793 (1935). According to Webster's New International Dictionary, a materialman is "one who supplies materials, esp[ecially] those used in building." *Materialman*, Webster's New Int'l Dictionary of the English Language (2nd ed. 1934). A financier is "one engaged in financial operations" or "one skilled in financial operations." *Financier*, Webster's New Int'l Dictionary of the English Language (2nd ed. 1934). Black's Law Dictionary defined a materialman as "[a] person who has furnished materials used in the construction or repair of a building, structure, or vessel." *Materialman*, Black's Law Dictionary (3rd ed. 1933). A financier is "[a] person employed in the economical management and application of public money" or "one skilled in matters appertaining to the judicious management of monetary affairs." *Financier*, Black's Law Dictionary (3rd ed. 1933). Thus, the dictionary definitions of the terms confirm the commonplace understanding: a materialman deals in materials, while a financier deals in finance.

But "[a] word in a statute may or may not extend to the outer limits of its definitional possibilities." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any

7

precedents or authorities that inform the analysis." *Id.* As such, this court's analysis does not end at the dictionary definitions, but also considers the statutory text, its purpose, and the way that these words have been interpreted and applied by other courts.

### B. Statutory text and purpose

As described *supra* at 4-5, the purpose of the Miller Act is to create an equivalent to a mechanic's lien for subcontractors and materialmen working on government projects. *See F.D. Rich Co., Inc.*, 417 U.S. at 122. The Act specifies that its remedy is available to those who "have furnished labor or material" in the course of a government project. 40 U.S.C. § 3133(b)(1). The Supreme Court, in detailing the history of the Miller Act, explains that it replaced the Heard Act, which served a similar function, but which contained certain "procedural difficulties" that kept parties from properly recovering costs. *Clifford F. MacEvoy Co.*, 322 U.S. at 106. The Miller Act was intended to remove these difficulties. *Id.* at 105-06. ("There was no expressed purpose in the legislative history to restrict in any way the coverage of the Heard Act; the intent rather was to remove the procedural difficulties found to exist under the earlier measure . . .").

In removing these difficulties, however, the Miller Act did not purport to open recovery to all parties who contributed to a government project, regardless of what was contributed or of proximity to the primary contractor. "Congress cannot be presumed, in the absence of express statutory language, to have intended to impose liability on the payment bond in situations where it

8

is difficult or impossible for the prime contractor to protect himself." *Id.* at 110. Instead, the purpose of the Act is to provide a remedy to those "who perform part of the original contract" through the supply of labor or materials and "who are well known [to the original contractor.]" *Id.* These limitations on Miller Act recovery, as well as the Act's focus on those supplying labor and materials, accord with this purpose to function as a replacement for a mechanic's lien, which is typically available to laborers working directly on the project, but not to distant contributors or financiers. *See, e.g., Lien, Black's Law Dictionary* (11th ed. 2019) (specifying that a mechanic's or materialman's lien is one that "secures payment for labor or materials supplied").

### C. Interpretation by other courts

The use of the term materialman by the courts further illuminates its meaning in the Miller Act. Though no comprehensive definition has been articulated, the Supreme Court has found that "an ordinary materialman . . . may be a manufacturer, a wholesaler or a retailer." *Clifford F. MacEvoy Co.*, 322 U.S. at 110. In essence, a materialman is one who provides materials.

Further, in construing the difference between a subcontractor and a materialman, the Ninth Circuit found that the following five factors are indicative of a materialman: "(1) a purchase order form is used by the parties; (2) the materials come from preexisting inventory; (3) the item supplied is relatively simple in nature; (4) the contract is a small percentage of the total construction cost; and (5) sales tax is included in the contract price." *United States ex rel. Conveyor Rental & Sales Co. v. Aetna Cas. & Sur. Co.*, 981 F.2d

448, 452 (9th Cir. 1992) (footnotes omitted). These factors again focus on whether a party provided materials, not labor or money, and whether a party is in the business of providing materials, as indicated by conditions such as preexisting inventory.

### D. Application to Billd

As evidenced by the dictionary definitions, the statutory intent of the Miller Act, and court usage, the primary distinction between a materialman and a financier is that a materialman is one who provides materials for a project; a financier is one who provides monetary funding or other financing for a project. The question that remains is thus whether Billd supplied materials or financing to the project.

Billd argues that it bought and resold project materials to Vertex and is thus a materialman. To support this allegation, Billd relies on its contract with Vertex and the related purchase statement. Docket 56 at 8-9; *see* Dockets 58-3, 58-4. Billd proposes that the contract outlines a relationship in which Vertex makes requests for materials and Billd purchases and resells those materials to Vertex. Docket 56 at 8. But a close reading of the contract between Billd and Vertex demonstrates that Billd is supplying Vertex with "trade credit" and not materials. Docket 58-3 at 1. ("Billd Exchange agrees to offer [Vertex] trade credit for [Vertex's] purchase of certain Program Goods or Services sourced from an Originating Supplier[.]") Under Section 1 of the agreement, Vertex appears to be the party responsible for scoping and pricing materials; Vertex then sends the estimate to Billd and waits for approval of the purchase. *See id.*;

10

*see also* Docket 53-2 (sales orders from Duro-Last listing Vertex, not Billd, as the customer).[1] If "approved for execution and *funding*" by Billd, Billd would extend trade credit to the originating supplier which was to be repaid by Vertex in installments. *See* Docket 58-3 at 1-2 (emphasis added). Billd suggests that, because the money was not loaned or advanced to Vertex, but rather to the originating supplier, that Billd is purchasing the materials. *See* Docket 56 at 10. This argument, however, misconstrues the central distinction between a materialman and a financer. The difference arises from *what* is being supplied, not to whom it is supplied. That Billd was supplying financing, even if it was supplied to an originating supplier and not directly to Vertex, indicates that it is a financier.

  Billd provides no evidence that it ever possessed, shipped, warehoused, or otherwise controlled the materials at issue before its claimed resale to Vertex. But Billd contends that it "obtained title to *all* materials that it purchased" and that this is adequate to render it a materialman. Docket 56 at 9. That title, per the language of the contract between Billd and Vertex, was only "[t]o the extent required for purposes of our supplier's, mechanic's,

---

[1] Though Billd claims that USF's affidavit and attached exhibits are not properly before the court because the affidavit was signed by one of USF's attorneys whose personal knowledge is not evident, the court finds that adequate personal knowledge exists for Docket 53-2 and that it may be considered for summary judgment purposes. Docket 60 at 3, n.1. The document was provided to USF by Billd or Vertex during the course of litigation to the attorney signatory. Docket 72 at 2, n.1; *see Moore v. Fargo Police Dep't.*, 297 F.App'x. 569, 569 (8th Cir. 2008) ("Counsel can be competent to provide an affidavit in support of a motion for summary judgment[.]") Further, Billd does not contest the authenticity of the document.

11

materialman's and/or other similar lien rights or bond claims[.]" Docket 58-3 at 10-11. Billd also limited the circumstances under which it could acquire title, disclaiming that it "shall not be deemed to have accepted title to any Program Goods or Service" unless Vertex conformed to certain conditions. *Id.* In the next clause, Billd again limits its claim to the materials, stating that "in no event will we bear any liability or risk of loss in connection with any Program Goods or Services." *Id.* at 11.

In its argument that this limited claim to title renders it a materialman, Billd cites the Tenth Circuit case *Yellow Pine Lumber Co. v. Ins. Co. of N. Am.*, 882 F.2d 470 (10th Cir. 1989). In *Yellow Pine*, physical possession of materials was not dispositive of materialman status. *Id.* at 471. But *Yellow Pine* is clearly distinguishable. In *Yellow Pine*, the claim was not being made under the Miller Act, but rather under Oklahoma state law. *Id.* The Oklahoma state law allows recovery by remote materialmen, unlike the Miller Act, and has its own history of interpretation by the courts. *See Richards & Conover Steel v. Nielsons, Inc.*, 755 P.2d 644, 646-48 (Okla. 1988). Additionally, the claimant in *Yellow Pine* exercised control over the materials by "arrang[ing] for [them] to be shipped from mills by common carrier directly to the project site[,]" unlike Billd who did not ship the materials or even take on risk of loss for the materials during shipping. *Yellow Pine*, 882 F.2d at 471. Thus, even if the court were to accept Billd's argument that physical possession of materials is not a requirement to be a materialman, Billd still fails to provide any additional evidence equivalent

12

to Yellow Pine's shipping arrangements of its control over or liability for the materials.

Lastly, in its responsive briefing, Billd cites to its "Merchant Supplier Terms & Conditions" to argue that Duro-Last, one of the originating suppliers, sold materials to Billd that it then resold to Vertex. Docket 60 at 7. Duro-Last allegedly agreed to the Merchant Supplier Terms & Conditions, which specified that "*the sale* of Program Goods or Services . . . to Billd Exchange, LLC" was governed by the Terms & Conditions. Docket 62-1 at 1 (emphasis added). No evidence, however, suggests that Duro-Last did in fact accept these terms. The only indication that Duro-Last received the terms is a link to the Merchant Supplier Terms & Conditions in an email to Duro-Last dated May 26, 2020. Docket 58-5 at 1. No evidence suggests that Duro-Last read, accepted, or acknowledged these terms. Instead, Duro-Last's own invoices list Vertex as the customer and recipient of materials. *See* Docket 53-2. The Merchant Supplier Terms & Conditions is, without more, a mere scintilla of evidence on which a reasonable factfinder could not find in Billd's favor.

Billd has failed to point to evidence on the record that it supplied the materials for the project. The evidence instead indicates that Billd provided financing and was thus a financier to Vertex. Because financiers cannot recover under the Miller Act, summary judgment is granted in favor of USF.

### E. Whether Billd's Miller Act notice was timely

The parties also dispute whether Billd's notice to USF under the Miller Act was timely. Docket 63 at 8-10; Docket 70 at 7-9. Because the court has

13

already found that Billd was not a proper claimant under the Act, the question is moot and the court declines to decide it at this time.

## CONCLUSION

Because no genuine dispute of material fact exists and because Billd is not a proper claimant under the Miller Act, it is

ORDERED that USF's motion for summary judgment (Docket 51) is granted.

It is FURTHER ORDERED that Billd's motion for summary judgment (Docket 55) is denied.

Dated May 31, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE